1  ROSA K. HIRJI | SBN 204722
    *rosa@rkhlawoffice.com*
2  JENNY CHAU | SBN 274360
    *jenny@rkhlawoffice.com*
3  DIANA MALTZ | SBN 322748
    *diana@rkhlawoffice.com*
4  **LAW OFFICES OF HIRJI & CHAU, LLP**
   5173 Overland Avenue
5  Culver City, CA  90230
   Tel. (310) 391–0330 // Fax (310) 943–0311
6
7  *Attorneys for Plaintiffs*
   P.H. and LAKESHA HARRIS

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  P.H., a minor, by and through her Guardian ad Litem, LAKESHA HARRIS; and LAKESHA HARRIS, an individual, | Case No.  5:21-cv-00219 |
| 12 13 | **COMPLAINT FOR JUDICIAL REVIEW OF SPECIAL EDUCATION ADMINISTRATIVE DUE PROCESS DECISION AND RECOVERY OF ADMINISTRATIVE ATTORNEY'S FEES** |
| 14              Plaintiffs, | |
| 15  v. | [20 U.S.C. § 1415(i)(2)(A), (i)(2)(C)(3) & (i)(3)(B)(i)(I) |
| 16  COMPTON UNIFIED SCHOOL DISTRICT, a public entity; and OFFICE OF ADMINISTRATIVE HEARINGS, a public entity, | |
| 17 18 | |
| 19              Defendants. | |

20

21

22

23          Plaintiffs bring this civil action for judicial review of the decision

24  in an administrative due process proceeding commenced under the Individuals

25  With Disabilities Education Act ("IDEA").

26

27          In support of this Complaint (the "Complaint"), plaintiffs allege as

28  follows:

                                    1.

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over the subject matter of this Complaint pursuant to 20 U.S.C. § 1415(i)(2)(A) and (i)(3)(A) and 28 U.S.C. §§ 1331 and 1343(a)(4).

2.     This Court is the proper venue for this action pursuant to 20 U.S.C. § 1391(b)(1) and (b)(2), in that (1) defendant COMPTON UNIFIED SCHOOL DISTRICT is located within the County of Los Angeles, State of California, and (2) all of the events alleged in this complaint took place within the County of Los Angeles, State of California.

**PARTIES**

3.     Plaintiff P.H. ("STUDENT") is an unemancipated minor presently residing in the City of Calimesa, County of Riverside, State of California.  She brings this action by and through her mother, LAKESHA HARRIS, who will seek this Court's appointment as Guardian Ad Litem upon filing this Complaint.

4.     Plaintiff LAKESHA HARRIS ("PARENT"; collectively with STUDENT, "Plaintiffs") is a natural person presently residing in the City of Calimesa, County of Riverside, State of California.

5.     Defendant COMPTON UNIFIED SCHOOL DISTRICT ("CUSD") is, and at all times pertinent to this Complaint was, a unified school district as defined in Cal.Ed.C. § 83.  Its territorial jurisdiction lies within the County of Los Angeles, State of California.

6.     Defendant OFFICE OF ADMINISTRATIVE HEARINGS ("OAH") is, and at all times pertinent to this Complaint has been, a quasi-judicial tribunal and division of the State of California Department of General Services created by Cal.Gov't C. § 11370.2(a).

//

2.

**FIRST CLAIM FOR RELIEF**

**JUDICIAL REVIEW OF IDEA ADMINISTRATIVE DECISION**

**by Plaintiffs against Defendant CUSD**

7.     Plaintiffs incorporate by this reference the allegations set forth above in paragraphs 1 through 6, inclusive, as though set forth fully herein.

8.     STUDENT was born on January 30, 2004.

9.     PARENT presently is, and at all times pertinent to this Complaint was, STUDENT's mother.

10.     CUSD is a Local Education Agency as defined in 20 U.S.C. § 1401(19)(A).

11.     Pursuant to Cal.Ed.C. § 56504.5, the California Department of Education has contracted with OAH to conduct the administrative due process hearings prescribed by 20 U.S.C. § 1415(f).

12.     On or about October 28, 2019, Plaintiffs presented OAH with a written complaint pursuant to 20 U.S.C. § 1415(b)(6) seeking an administrative due process hearing pursuant to 20 U.S.C. § 1415(f).  Plaintiffs' administrative complaint sought relief under IDEA with respect to STUDENT's attendance at CUSD during the 2017–2018 school year.

13.     Following the due process hearing, on or about November 10, 2020, an OAH Administrative Law Judge (the "ALJ") rendered a written final decision on the administrative complaint pursuant to 20 U.S.C. § 1415(h)(4) (the "DPH Decision").  The case number assigned was OAH No. 2019101110.

**The ALJ's Findings**

14.     Pursuant to 20 U.S.C. § 1415(h)(4) and Cal.Ed.C. § 56505(e)(5), the ALJ included written findings of fact within the DPH Decision.  In pertinent part, those findings are summarized below in paragraphs 15 through 37, inclusive, of this Complaint.  Plaintiffs intend the substantive

3.

contents of those Complaint paragraphs solely as reflections of factual findings included within the DPH Decision, and not as allegations of actual facts by which Plaintiffs intend to be bound.

15.     CUSD hired PARENT as a full-time employee in January 2017.  At that time, PARENT said she resided with STUDENT and her other children in a house (the "L.A. House") she owned in the City of Los Angeles. The L.A. House was located within the territorial jurisdiction of the Los Angeles Unified School District ("LAUSD").

16.     In the summer of 2017, PARENT applied for permission from CUSD and LAUSD for STUDENT to attend a CUSD public school on the basis that PARENT was a full-time CUSD employee.  On July 28, 2017, CUSD and LAUSD granted that permission by executing a document pursuant to Cal.Ed.C. § 48204(b).  On August 9, 2017, a CUSD official addressed a letter to PARENT formally informing her of CUSD's grant of permission for STUDENT to attend CUSD's Bunche Elementary School ("Bunche") on the basis of PARENT's employment within CUSD's geographic jurisdiction.  Both the letter and the executed document contained cautionary language stating that falsification of information might result in revocation of that permission.

17.     On August 17, 2017, STUDENT started eighth grade at Bunche.  At that time, she had not been identified as a student with a disability, and she was not receiving services or accommodations pursuant to either an Individualized Education Program ("IEP") under IDEA or a Section 504 plan under the Rehabilitation Act of 1973 (29 U.S.C. § 794).

18.     After someone said something mean to STUDENT while she was at Bunche on September 14, 2017, STUDENT began hyperventilating and crying.  Others placed her on the floor, and she began shaking, vomiting and going in and out of consciousness.  The school called paramedics, who transported STUDENT to a hospital emergency room.  STUDENT had similar

4.

episodes while at Bunche on October 2 and 23, 2017.  On both those occasions, she had to be transported to the hospital emergency room.

19.    Hospital personnel diagnosed STUDENT's three episodes as pseudoseizures.  At some point, the Bunche school principal (the "Principal") gained awareness of that diagnosis and discussed the episodes with PARENT, who requested a Section 504 meeting to address STUDENT's health concerns.

20.    CUSD convened the Section 504 meeting on October 24, 2017. Attendees at the meeting included PARENT, STUDENT, the Principal and other CUSD employees.  During the course of the meeting, STUDENT had another pseudoseizure.

21.    The purpose of the Section 504 meeting was to determine whether STUDENT was eligible for a Section 504 plan of accommodations, and, if so, to develop such a plan.  The CUSD employees at the meeting collectively found that she met the eligibility criteria for Section 504.

22.    At the invitation of both PARENT and the Principal, one of the CUSD employees in attendance at the Section 504 meeting was CUSD's Assistant Superintendent of Special Education (the "Special Ed. Superintendent"). At the meeting, he offered to have STUDENT assessed for special education services, perhaps with eligibility on the basis of emotional disturbance or other health impairment.

23.    At the Section 504 meeting, PARENT strongly rejected the Special Ed. Superintendent's assessment offer, stating that labeling STUDENT a special education student would compromise her plans and professional goals, especially with eligibility on the basis of emotional disturbance.  Because of the forcefulness of her refusal, the Special Ed. Superintendent wanted to have further conversations with PARENT to gain her consent before issuing an assessment plan.  When he testified as a witness at the due process hearing, however, he could not recall specifics of any such "further conversations" with PARENT.

5.

He also testified that he "thought he had someone issue an assessment plan."

24.     At the Section 504 meeting, the CUSD employees in attendance considered STUDENT's safety at school to be a priority and agreed that she required support.  PARENT requested that CUSD provide STUDENT during the school day with full-time support from a certified nursing assistant or other adult aide with mental health training. PARENT was told that her request would be forwarded to CUSD's Senior Director of Pupil Services for decision. Around that time, the Senior Director of Pupil Services had been missing work for weeks on end due to serious medical issues, and neither she nor any Pupil Services personnel ever responded to PARENT's full-time adult aide request. The Special Ed. Superintendent actively favored providing STUDENT with such support.  Other CUSD staff members, motivated by safety and other concerns, also favored providing STUDENT with aide support.

25.     STUDENT had another pseudoseizure episode at Bunche the day after the Section 504 meeting.  She had additional pseudoseizures while at Bunche on November 7 and December 4, 2017.  The latter episode resulted in the evacuation of her classroom and eventually led to her running off campus and attempting suicide by running into oncoming vehicle traffic.  A CUSD police officer was summoned to the scene, and he facilitated placing STUDENT on a 72-hour psychiatric hold pursuant to Cal.Welf. & Inst.C. § 5150.  Following that, STUDENT spent two weeks in a UCLA neuropsychiatric hospital, and she was subsequently admitted to another mental health facility.

26.     During the week of December 11, 2017, when a work colleague asked PARENT why she didn't get STUDENT assessed for special education, PARENT said that she did not want STUDENT to be labeled a special education student. PARENT and that colleague had a similar discussion later that month.

//

6.

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

27.     On January 9, 2018, PARENT sent the Principal a letter requesting a special education assessment for STUDENT.  CUSD issued an assessment plan that day, proposing eight distinct assessments of STUDENT. PARENT signed and returned the assessment plan on January 11, 2018.

28.     On January 22, 2018, PARENT notified CUSD's human resources department that she had changed addresses from the Los Angeles House to the address of a house her mother owned in Compton (the "Compton House"), i.e., within CUSD's geographic jurisdiction.  At the due process hearing, PARENT testified in detail that she moved to the Compton House with her three children to care for her mother, who was terminally ill and on palliative care.

29.     Around that time, PARENT told her immediate superior at work that she had moved into CUSD's jurisdictional area.  He later heard CUSD's Superintendent (the "Superintendent") say that PARENT did not live at the Compton House.  On February 8, 2018, PARENT's work superior suggested that PARENT provide CUSD enrollment personnel with "proof/bills" for the Compton House address, because they would be necessary to establish residency.

30.     On February 13, 2018, PARENT submitted a Student Referral Evaluation Form, along with an Annual Update Form, to CUSD's Transfer Permits Office, informing the office that STUDENT had changed her address to the Compton House.  On February 23, 2018, PARENT requested an intradistrict permit from CUSD, which would allow STUDENT to continue attending Bunche even though a different school was the home school for the Compton House address.  To verify residency, PARENT submitted an undated printout from the SoCalGas website, showing that bills for the Compton House should be sent to PARENT at the Compton House address.

//

//

//

7.

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

31.     The Superintendent received information causing him to doubt PARENT's claim to be living at the Compton House.  He personally undertook the task of verifying STUDENT's residency, because his normal designee for ascertaining residency was on medical leave and had not been replaced.

32.     On February 23, 2018, the Superintendent met with PARENT and informed her that the CUSD police had determined that she did not live at the Compton House.  He stated that Friday, February 23, 2018, was STUDENT's last day at school with an enrollment date ending Monday, February 26, 2018.

33.     CUSD's Chief of Police (the "Police Chief") testified at the due process hearing that (1) a CUSD police sergeant attempted a package delivery to PARENT at the Compton House on February 23, 2018, but nobody was home; (2) the sergeant then spoke to neighbors who stated they had never seen kids at the Compton House although they knew of an elderly female who resided there; and (3) the sergeant was unable to contact anyone at the house when he returned later in the day.  Based solely upon that investigation, CUSD's school police concluded that PARENT did not reside at the Compton House.

34.     On February 24, 2018, PARENT wrote the Principal requesting a formal letter stating that STUDENT was not allowed to attend CUSD.  On Friday, March 2, 2018, the Principal received a second letter, this time from attorney Nicole Hodge, stating that STUDENT had been improperly disenrolled and that PARENT would return her to school the following Monday. That same day, at 7:00 in the evening, a CUSD police officer attempted to contact PARENT at the Compton House but instead found her aunt, who was there visiting.  The aunt told the officer that STUDENT did not live in the Compton House.  The officer also spoke to people who said they had lived in the neighborhood for years without seeing kids at the Compton House.

35.     The Superintendent tasked the Principal with writing a letter to inform PARENT of the basis for STUDENT's disenrollment. The Principal

8.

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

wrote a letter (the "March 5 Letter") that (1) reviewed the CUSD police visits to the Compton House that had taken place on February 23 and March 2, 2018; (2) reported the police finding that the Compton House was not the actual residence of PARENT and her children; (3) stated accordingly that STUDENT was not a student residing within CUSD's boundaries; (4) advised PARENT that CUSD was denying STUDENT's enrollment; (5) stated that STUDENT would not be allowed to attend Bunche; and (6) invited PARENT to contact CUSD's Pupil Services Office or the Superintendent's Office if PARENT required further information regarding the address verification process or enrollment. The Principal gave PARENT the letter on Monday, March 5, 2018.

36.    At the time it disenrolled STUDENT on February 23, 2018, CUSD had completed only three of the assessments in the plan PARENT had signed in early January.  One of them, a psychoeducational assessment, found that STUDENT met the criteria for three distinct grounds of special education eligibility:  emotional disturbance, other health impairments and specific learning disability.  Also completed was a functional behavior assessment, which recommended behavior supports and an intervention plan to be included as part of STUDENT's IEP.

37.    Because it had disenrolled STUDENT, CUSD never completed the rest of her assessments, never convened an IEP Team meeting for her, and never found her eligible for special education.

**The ALJ's Issue Determinations**

38.    In his written DPH Decision, the ALJ made the findings, rulings and determinations synopsized below in paragraphs 39 through 56, inclusive, of this Complaint.

39.    The ALJ found that the Section 504 meeting held on October 24, 2017, "was the equivalent of a referral of [STUDENT] for special education assessment." Citing Cal.Ed.C. § 56321(a), he concluded that this required CUSD

9.

1  to provide PARENT with a written proposed assessment plan, along with notice

2  of her parental rights, within 15 calendar days. He found that CUSD's last day

3  to meet that statutory duty was November 8, 2017. He also found that CUSD

4  missed the deadline by over two months. He acknowledged that CUSD's failure

5  to issue an assessment plan in a timely fashion was a "procedural error".

6       40.    The ALJ denied relief on this ground, finding that the two-

7  month delay in issuing the assessment plan had not denied STUDENT a free

8  appropriate public education ("FAPE").  Citing 20 U.S.C. § 1415(f)(3)(E)(ii)

9  and Cal.Ed.C. § 56505(f)(2) & (j), the ALH observed that a procedural violation

10  of IDEA only results in liability for FAPE denial if it impedes the child's right to

11  FAPE, significantly impedes the parent's opportunity to participate in the

12  decision-making process, or caused a deprivation of educational benefits.

13  The ALJ accordingly placed a burden of proof on STUDENT to demonstrate

14  by a preponderance of evidence that CUSD had denied her a FAPE by untimely

15  issuance of the assessment plan.

16       41.    More specifically, the ALJ reasoned that STUDENT bore the

17  burden of proving that PARENT "would have signed an assessment plan before

18  January 9, 2018," in other words, prior to receiving it. The ALJ found that

19  STUDENT failed to prove this during the hearing, because (1) PARENT

20  never stated during her witness testimony when she would have agreed to the

21  assessment or what event would have caused her to do so; (2) STUDENT did not

22  provide persuasive evidence that PARENT would have signed an assessment plan

23  before January 9, 2018; (3) STUDENT did not otherwise present evidence as to

24  when PARENT would have signed an assessment plan; and (4) the evidence

25  demonstrated that PARENT would not have signed an assessment plan prior to

26  January 9, 2018.

27       42.    The ALJ concluded that STUDENT had failed to meet her

28  burden of proving FAPE denial, expressly finding that "[STUDENT's]

10.

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

1    assessments were not delayed by [CUSD's] violation of its" duty under IDEA

2    to issue an assessment plan two months earlier.

3          43.    Citing Cal.Ed.C. § 56344(a), the ALJ found that PARENT's

4    return of the signed assessment plan on January 11, 2018, started a 60-day period

5    within which CUSD had to complete the assessments and convene an IEP Team

6    meeting.  He found that the last day of that period was March 12, 2018.

7          44.    The ALJ noted that a California school district's IDEA duty to

8    provide special education services ordinarily depends on whether the student's

9    parent resides within the district's territorial jurisdiction. The ALJ found that the

10   SoCalGas website billing printout PARENT had submitted to CUSD qualified for

11   consideration as evidence of residency pursuant to Cal.Ed.C. § 48204.1 and

12   CUSD's own administrative rule AR 5111.1 ("AR 5111.1").

13         45.    On conflicting evidence, the ALJ found that STUDENT had

14   not carried her burden of showing by a preponderance of evidence that PARENT

15   resided in the Compton House during 2018. He found PARENT's representations

16   to CUSD that she lived in the Compton House to be "deceiving" and "a ruse".

17         46.    The ALJ rejected STUDENT's assertion that CUSD had

18   violated its own AR 5111.1 by disenrolling her on February 23, 2018.

19   The ALJ noted that AR 5111.1 provides that (1) upon determining that a

20   student's enrollment was based on false or unreliable evidence of residency, the

21   Superintendent or his designee shall deny or revoke that student's enrollment;

22   (2) CUSD must specifically inform that student's parent that she has 10 school

23   days within which to provide new material evidence of residency before the

24   disenrollment becomes final; and (3) the Superintendent's disenrollment will

25   become final 10 days later if no material evidence of residency is provided.

26         47.    The ALJ construed AR 5111.1 to provide that the

27   Superintendent's revocation of a student's enrollment is effective immediately

28   upon his determination that her enrollment was based on false or unreliable

11.

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

evidence of residency, as opposed to taking effect upon the date that his disenrollment decision becomes final under the terms of the regulation. The ALJ thus found that STUDENT's disenrollment took effect on February 23, 2018.

48.     The ALJ acknowledged that the Principal's March 5 Letter "did not strictly conform" to AR 5111.1's 10-day notice requirement, since it did not specifically inform PARENT that she had 10 school days within which to provide new material evidence of residency before STUDENT's disenrollment became final. He nevertheless ruled that this violation of AR 5111.1 was inconsequential, citing Cal.Ed.C. § 56505(j) for the premise that a due process hearing decision cannot be based solely upon a nonsubstantive procedural error. He found CUSD's violation of its own 10-school-day notice requirement to be such a nonsubstantive procedural error.  He reasoned that if STUDENT had not persuaded him during the due process hearing that PARENT resided in the Compton House, then PARENT would not have persuaded the Superintendent of that fact had she been given the required opportunity to do so in 2018, meaning that the outcome would have been the same.

49.     The ALJ rejected STUDENT's argument that CUSD's permission for her to attend its schools based on parental employment remained in effect during 2018 pursuant to Cal.Ed.C. § 48204(b), thereby precluding her disenrollment. The ALJ dismissed that contention as "disingenuous" and insinuated that it was "shameful".

50.     The ALJ noted that the fundamental basis for granting § 48204(b) permission to attend CUSD schools based on parental employment was that STUDENT otherwise would have had to attend LAUSD (the district in which PARENT resided during summer 2017) rather than CUSD (the district in which PARENT worked).  According to the ALJ, once PARENT relocated her residence to Compton, the permission obtained pursuant to § 48204(b) was "no longer necessary" and "not needed".

12.

51.     Without citation of authority, the ALJ found that each time PARENT represented to CUSD that she resided in the Compton House, she thereby repudiated and renounced CUSD's 48204(b) enrollment permission by in effect claiming that such permission was "no longer necessary" and "not needed". The ALJ cited five different occasions on which PARENT had made such representations, only one of which predated STUDENT's disenrollment on February 23, 2018.

52.     The ALJ commented on cautionary language included within CUSD documents from the summer of 2017 to the effect that "falsification of information may result in revocation" of permission under § 48204(b), but he did not expressly find that CUSD had in fact revoked that permission.  Citing no authority other than the due process hearing testimony of CUSD's current and former Senior Directors of Pupil Services, the ALJ ruled that it was unnecessary for CUSD to give PARENT any notice of the revocation of its § 48204(b) permission, since PARENT had "renounced" that permission.

53.     Based on the reasoning synopsized above in paragraphs 45 through 52, inclusive, of this Complaint, the ALJ concluded that STUDENT had not proved by a preponderance of the evidence that CUSD wrongfully disenrolled her in February 2018.

54.     The ALJ found that the Superintendent's disenrollment decision on February 23, 2018, terminated CUSD's obligation to educate STUDENT.  For that reason, he ruled that CUSD no longer had any obligations to continue assessing STUDENT, or to hold an IEP Team meeting for her, after February 23, 2018, and thus did not violate Cal.Ed.C. § 56344(a)'s 60-day deadline by failing to complete those activities on or before March 12, 2018.

55.     The ALJ concluded that STUDENT had no entitlement to special education and related services prior to CUSD's unilaterally disenrolling her on February 23, 2018, since she had not yet been assessed or made eligible.

13.

He further concluded that she had no such entitlement after her disenrollment, because CUSD was no longer under any obligation to educate her at all.

56.     Having found no actionable CUSD breach of any IDEA obligation owed STUDENT, the ALJ never reached the question of remedy.

**Assignments of Error**

57.     For the reasons set forth below in paragraphs 58 through 66, inclusive, of this Complaint, the ALJ erred in concluding that CUSD did not deny STUDENT a FAPE by issuing her assessment plan two months after the deadline imposed by Cal.Ed.C. § 56321(a).

58.     Consistent with 20 U.S.C. §§ 1414(b)(1) and 1415(b)(3) and (c)(1) and with 34 C.F.R. § 300.304(a), Cal.Ed.C. § 56321(a) and (b)(3) required not only that the assessment plan proposed for STUDENT be given to parent within 15 days of STUDENT's referral for assessment, but also that it be in writing and explain the types of assessments to be conducted.  Pursuant to Cal.Ed.C. § 56321(c)(1) and (c)(4) as well as 34 C.F.R. § 300.300(1)(1)(i), and consistent with 20 U.S.C. § 1414(d)(1)(A)(i)(I), CUSD could not conduct the assessments set forth in the proposed plan until it obtained PARENT's informed consent.  Pursuant to 34 C.F.R. §§ 300.9(a) and (b) and 300.300(1)(1)(i), PARENT's consent would be operative for the purpose of authorizing STUDENT's assessments only if (a) PARENT at the time of the consent was fully informed of all information relevant to those assessments, and (b) PARENT consented in a writing that described the assessments.

59.     By delaying two months past the statutory deadline before providing PARENT with the mandatory written explanation of the types of assessments of STUDENT it intended to conduct, CUSD withheld information from PARENT relevant to those assessments.  CUSD thereby deprived PARENT during the two-month period of delay of the legal ability to give the consent required before those assessments could proceed. As indicated in Cal.Ed.C.

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

§ 56321(a), the assessment of STUDENT was to function as a step in the development of her IEP.  It follows that CUSD, by its two-month delay in issuing STUDENT's written assessment plan, interfered with PARENT's opportunity to participate in the formulation process of an IEP for STUDENT and significantly impeded PARENT's ability to participate in the decisionmaking process regarding the provision of a FAPE to STUDENT.  Pursuant to Cal.Ed.C. § 56501(f)(2)(B) and (j), the ALJ erred in determining that CUSD's violation of Cal.Ed.C. § 56321(a) was a harmless nonsubstantive procedural error that did not deprive STUDENT of a FAPE.

60.   Cal.Ed.C. § 56321(b)(4) required that the written assessment plan proposed for STUDENT state that the assessments would not result in an IEP for STUDENT without PARENT's further consent. The administrative record contains no assertion, proof or finding that CUSD had notified PARENT prior to January 9, 2018, that she had the right to consent to assessment without consenting to receipt of special education and related services for STUDENT, or that her consent to assessment would not be construed as consent to receipt of special education and related services for STUDENT.  That information was relevant to PARENT's decision whether to consent to any proposed assessments for STUDENT, since the ALJ found that the articulated basis for PARENT's earlier reluctance regarding STUDENT's assessment was that labeling STUDENT a special education student might stigmatize her future, particularly if she were made eligible on the basis of emotional disturbance.  As a result of CUSD's two-month delay in notifying PARENT that consent to STUDENT's assessment would not be construed as consent to her receipt of special education and related services, PARENT was not fully informed during the period of delay of all information relevant to the proposed assessments and was thereby deprived during the period of delay of the legal ability to give the consent required before the assessments could proceed.  For this additional reason, and for the reasons

15.

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

1    stated in paragraph 59 of this Complaint, the ALJ erred in determining that

2    CUSD's violation of Cal.Ed.C. § 56321(a) was a harmless nonsubstantive

3    procedural error that did not deprive STUDENT of a FAPE.

4            61.    Given the ALJ's finding that one of the three assessments

5    CUSD actually did complete for STUDENT recommended she be made eligible

6    for special education services on one or more of three separate bases of

7    eligibility, there is a distinct possibility as well as a strong likelihood that CUSD

8    would have determined STUDENT to be eligible had it completed all the

9    assessments in the assessment plan to which PARENT consented.  Given the

10   ALJ's finding that another of the three completed assessments recommended

11   adoption of a behavior plan for STUDENT upon her being made eligible, and

12   given the ALJ's finding that CUSD's Assistant Superintendent of Special

13   Education and other CUSD staff members supported providing STUDENT with

14   the full-time adult aide support PARENT had requested, there is a distinct

15   possibility as well as a strong likelihood that STUDENT would have had a

16   superior educational opportunity at Bunche had CUSD completed all the

17   assessments in the assessment plan to which PARENT consented.  Given the

18   ALJ's findings that CUSD terminated all educational services to STUDENT after

19   February 23, 2018, there is a distinct possibility as well as a strong likelihood that

20   STUDENT, had CUSD completed all the assessments in the assessment plan to

21   which PARENT consented, would have had an IEP requiring a FAPE

22   substantively superior to what STUDENT received after February 23, 2018.

23           62.    By delaying two months past the statutory deadline before

24   providing PARENT with the written assessment plan required by Cal.Ed.C.

25   § 56321(a), CUSD thereby deprived PARENT during the two-month period of

26   delay of the legal ability to give the consent required before those assessments

27   could proceed.  CUSD's violation of Cal.Ed.C. § 56321(a) thus delayed

28   commencement of the assessments for a two-month period.  This in turn delayed

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

the 60-day statutory deadline for determination of STUDENT's IDEA eligibility under Cal.Ed.C. §§ 56342(a) and 56344(a).  Given that CUSD's 15-day winter recess during the 2017–2018 School Year did not count as part of the 60-day deadline under Cal.Ed.C. § 56344(a), the 60-day delay in issuing STUDENT's assessment plan translated into a delay of approximately 45 days in determining her eligibility, which period of delay commenced on or about January 29, 2018, and extended past CUSD's disenrollment of STUDENT on February 23, 2018.

63.   For the reasons set forth in paragraphs 61 and 62 of this Complaint, CUSD's two-month delay in issuing STUDENT's written assessment plan (1) impeded STUDENT's right to a FAPE beginning on or about January 29, 2018, (2) caused STUDENT to suffer a deprivation of educational benefits she would otherwise have enjoyed beginning on or about January 29, 2018, and (3) resulted in the loss of an educational opportunity to STUDENT beginning on or about January 29, 2018.  Pursuant to Cal.Ed.C. § 56501(f)(2)(A), (f)(2)(C) and (j), the ALJ erred in determining that CUSD's violation of Cal.Ed.C. § 56321(a) was a harmless nonsubstantive procedural error that did not deprive STUDENT of a FAPE.

64.   In accordance with 20 U.S.C. § 1414(a)(1)(D)(i)(I), and in addition to the statutory mandates and proscriptions cited above in paragraph 58 of this Complaint, Cal.Ed.C. § 56321(c)(1) and 34 C.F.R. § 300.300(a)(1)(iii) required CUSD to make reasonable efforts to obtain PARENT's informed consent before conducting the assessments of STUDENT.  Cal.Ed.C. §§ 56321(h) and 56341.5(h), along with 34 C.F.R. §§ 300.300(d)(5) and 300.322(d), further required CUSD to document its attempts to obtain PARENT's consent by maintaining a record of those attempts, such as (1) detailed records of telephone calls made or attempted and the results of those telephone calls, (2) copies of correspondence sent to PARENT and any responses received, and/or (3) detailed records of visits made to PARENT's home or place

17.

of employment and the results of those visits. The administrative record contains no such documentation, nor does it contain any assertion, proof or finding that CUSD made any reasonable efforts to obtain PARENT's consent to STUDENT's assessment prior to January 9, 2018.

65.    Since CUSD had rendered PARENT legally incapable of consenting to STUDENT's assessment plan by failing to provide her with the written assessment plan until January 9, 2018, it was immaterial to the question of FAPE denial whether PARENT would have signed an assessment plan before that date.  Accordingly, and in light of the statutory and regulatory scheme detailed in paragraph 64 of this Complaint, the ALJ erred in concluding that STUDENT bore a burden of proving that PARENT would have signed an assessment plan prior to January 9, 2018.

66.    The ALJ clearly erred in finding that "[STUDENT's] assessments were not delayed by [CUSD's] violation of its" duty under IDEA to issue an assessment plan two months earlier, in that (1) CUSD's violation rendered PARENT legally incapable of giving informed consent to the assessments prior to January 9, 2018, and (2) IDEA prohibited CUSD from proceeding with the assessments until PARENT gave informed consent.

67.    Independent and de novo review of the evidence in the administrative record, giving a level of deference to the ALJ's factual findings that is appropriate in light of an examination of the entire record, shows that STUDENT carried the burden of proving that PARENT resided in the Compton House from mid-January of 2018 through and including the end of the 2017–2018 school year on June 30, 2018.  The ALJ erred in finding otherwise.

68.    For the reasons given below in paragraphs 69 through 74, inclusive, of this Complaint, the ALJ erred in rejecting STUDENT's assertion that CUSD violated its AR 5111.1 by disenrolling her on February 23, 2018.

//

18.

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

69.     The ALJ erred in construing AR 5111.1 to provide that the Superintendent's revocation of a student's enrollment is effective immediately upon his determination that her enrollment was based on false or unreliable evidence of residency, as opposed to taking effect upon the date that his disenrollment decision becomes final under the terms of the regulation, in that California rules of statutory interpretation govern the construction of California local agency administrative regulations, and well-settled California rules of statutory construction, when applied to AR 5111.1, compel construing it so that a disenrollment decision does not take effect prior to its finality.

70.     In light of the ALJ's finding that the March 5 Letter failed to comply with AR 5111.1 by omitting the required notice to PARENT that she had 10 school days within which to provide new material evidence of residency before STUDENT's disenrollment became final, well-settled rules of California statutory construction compel the conclusion that the 10-school-day period never commenced running, so that the disenrollment decision never became final under AR 5111.1 and thus never took effect.

71.     For the reasons given below in paragraphs 72 through 74, inclusive, of this Complaint, the ALJ erred in finding that the March 5 Letter's omission of AR 5111.1's required notice of the 10-school-day deadline was a nonsubstantive procedural error that was inconsequential in light of the ALJ's own finding that PARENT did not reside in the Compton House during 2018.

72.     The ALJ cited Cal.Ed.C. § 56505(j) for the proposition that nonsubstantive procedural errors do not, without more, warrant relief in a due process hearing.  Properly interpreted, § 56505(j) applies only to errors in following procedures set forth in IDEA or its implementing regulations and statutes.  AR 5111.1 is not a regulation that implements IDEA, so the ALJ erred in applying § 56505(j) to the Superintendent's disenrollment decision.

//

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

73.     The ALJ erred in disregarding the omission of the ten-school-day notice on the theory that it did not affect the disenrollment outcome since the Superintendent, even if he had complied with AR 5111.1 in 2018 and notified PARENT of her opportunity to provide him with material evidence of residency, would still have made the same finding as the ALJ on the question of PARENT's residency.  The issue raised by STUDENT's argument, however, was not whether the Superintendent could have disenrolled her had he followed the law, but whether his decision to disenroll her was legally effective given that he failed to follow the law set forth in AR 5111.1.  Under California law, school districts must comply with their own regulations, which have the force of law.

74.     Under California law, when a litigant in a civil matter is illegally denied the opportunity to be heard before the proper trier of fact, any resulting adverse decision is treated either as reversible per se or as sustainable only in the event that there is no material evidentiary conflict bearing on the issue.  This holds true even if the litigant subsequently obtains the same adverse decision after a fair hearing before a different trier of fact.  The administrative record in the instant due process hearing case establishes, on the basis of PARENT's witness testimony alone, that there was substantial evidence from which the Superintendent could have found in 2018 that PARENT was residing at the Compton House if only he had given her the legally required opportunity to submit such evidence.  In light of the ALJ's finding that the Superintendent did not give PARENT that opportunity, the ALJ erred in concluding that the Superintendent's February 2018 disenrollment order was legally effective.

75.     In his written decision, the ALJ failed to address STUDENT's argument, tendered in her written closing brief, that the U.S. and California Constitutions' Due Process Clauses rendered CUSD's purported disenrollment of her ineffective, because CUSD gave her no opportunity to be heard prior to disenrolling her.  For the reasons given below in paragraphs 76 through 78,

20.

inclusive, of this Complaint, the ALJ erred in concluding that the Superintendent's February 2018 disenrollment order was legally effective notwithstanding this argument.

76.     At all times pertinent to this Complaint, the State of California has maintained a system of free elementary and secondary public schools, as well as statutes which not only make attendance generally compulsory on the students' part, but also impose a compulsory mandate upon parents to ensure that their children attend public school.  For the purpose of maximizing parental participation in their children's education, California statutes generally provide that children must attend public school in the school district where their parent or parents reside, and that school districts may not refuse to educate them absent good cause.  For children such as STUDENT who attend school in a district that has deemed them via Cal.Ed.C. § 48204(b)(1) to have complied with the residency requirements for school attendance due to the location of their parent's employment, Cal.Ed.C. § 48204(b)(8) protects them through twelfth grade from disenrollment by that district absent a showing of good cause.

77.     By virtue of the above-described system of compulsory public education, STUDENT's legal entitlement to attend a CUSD school during the 2017–2018 school year was a State-recognized property interest entitled to the protection of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  The same is true of PARENT's entitlement to have STUDENT attend one of CUSD's public schools if she so chose as long as her place of employment was within the District's attendance boundaries.  Without regard to whether they qualify as property interests, Plaintiffs' aforementioned entitlements are also entitled to the protection of the Due Process Clause of the California Constitution.

78.     Consistent with the ALJ's findings, the administrative record in the due process hearing case establishes without any controversy whatsoever

21.

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

1   that the Superintendent, in rendering his decision on February 23, 2018, to

2   disenroll STUDENT from CUSD on the purported basis of nonresidency, acted

3   (1) without first giving any notice to Plaintiffs, (2) without giving Plaintiffs any

4   opportunity whatsoever to be heard on the matter, (3) without giving Plaintiffs

5   any notice that they had a right to be heard on the matter, and (4) without

6   actually considering any evidence bearing on the residency issue.  In so doing, the

7   Superintendent violated Plaintiffs' constitutional rights under the Due Process

8   Clauses of both the United States and California Constitutions.

9        79.    In his written decision, the ALJ failed to address STUDENT's

10  argument, tendered in her written closing brief, that the Superintendent's

11  disenrollment of STUDENT on the purported basis of nonresidency was illegal

12  and therefore of no effect, inasmuch as CUSD's governing board had not adopted

13  a policy containing all the elements set forth in Cal.Ed.C. § 48204.2(b).  For the

14  reasons given below in paragraphs 80 and 81 of this Complaint, the ALJ erred in

15  concluding that the Superintendent's February 2018 disenrollment order was

16  legally effective notwithstanding this argument.

17       80.    Since the ALJ expressly found that the SoCalGas website

18  billing printout PARENT had submitted to CUSD qualified for consideration

19  as evidence of residency pursuant to Cal.Ed.C. § 48204.1 and CUSD's own

20  administrative rule AR 5111.1, CUSD was required by Cal.Ed.C. § 48204.1(a) to

21  accept that as evidence that STUDENT met the residency requirements for school

22  attendance in CUSD as set forth in Cal.Ed.C. §§ 48200 and 48204.  If a CUSD

23  employee reasonably believed that the SoCalGas website billing printout was

24  false or unreliable evidence of residency, Cal.Ed.C. § 48204.1(c) allowed CUSD

25  to make reasonable efforts to determine whether STUDENT actually met the

26  residency requirements set forth in Cal.Ed.C. §§ 48200 and 48204.  CUSD's

27  ability to make such efforts was qualified by Cal.Ed.C. § 48204.2, which at all

28  times pertinent to this Complaint barred CUSD from undertaking an investigation

22.
COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

of STUDENT pursuant to Cal.Ed.C. § 48204.1(c) until CUSD's governing board had acted at a public meeting to adopt a policy containing all of five distinct elements specifically and expressly set forth in Cal.Ed.C. § 48204.2(b).

81.     At the administrative due process hearing, CUSD employees gave competent and uncontradicted testimony that several of the policy elements enumerated in Cal.Ed.C. § 48204.2(b) had never been included in any policy adopted by CUSD's governing board.  Because CUSD police investigated STUDENT's residency before CUSD's governing board had adopted a policy containing all of the requirement elements, that investigation was prohibited by Cal.Ed.C. § 48204.2(a), and its results could not be used under Cal.Ed.C. § 48204.1(c) to relieve CUSD of its obligation under Cal.Ed.C. § 48204.1(a) to accept the SoCalGas website billing printout as evidence that STUDENT met the residency requirements for CUSD attendance as set forth in Cal.Ed.C. §§ 48200 and 48204.  In light of the ALJ's findings that the results of the illegal CUSD police investigation furnished the sole basis for the Superintendent's February 2018 decision to disenroll STUDENT on the basis of nonresidency, that decision was of no legal effect, and it did not terminate CUSD's duty to provide education services to STUDENT.

82.     For the reasons given below in paragraphs 83 through 88, inclusive, of this Complaint, the ALJ erred in rejecting STUDENT's argument that CUSD's permission for her to attend its schools based on parental employment remained in effect during 2018 pursuant to Cal.Ed.C. § 48204(b).

83.     Cal.Ed.C. § 48204(b)(1) permits a school district to deem a pupil to have complied with the residency requirements for school attendance in that district if at least one parent of the pupil is physically employed within the boundaries of that school district for a minimum of 10 hours during the school week.  Cal.Ed.C. § 48204(b)(2)–(b)(7) address the circumstances under which a pupil can gain that permission.  The specifics of those circumstances suggest,

1   and arguably require, that the parent who is physically employed within the

2   school district must reside within the territory of a different school district at the

3   time her child is deemed to have complied with residency requirements for

4   attending the school district serving the site of her employment.

5          84.    Once a pupil is deemed to have complied with requirements

6   for school attendance pursuant to Cal.Ed.C. § 48204(b)(1) and is enrolled in a

7   school in a district whose territory includes the site of the parent's physical

8   employment, the location of the parent's residence becomes irrelevant, as long as

9   she continues to be physically employed within the school district of deemed

10  residence.  Once a school district deems a pupil to have complied with the

11  requirements for attending its schools based on parental employment, Cal.Ed.C.

12  § 48204(b)(8) relieves the pupil of having to reapply in the next school year to

13  continue attending a school in that district, and it further requires the governing

14  board of that district to allow the pupil to attend its schools through grade 12

15  if the parent so chooses and if at least one parent of the pupil continues to be

16  employed by an employer situated within that district's attendance boundaries.

17         85.    Properly construed, Cal.Ed.C. § 48204(b)(8) allowed only

18  two exceptions to STUDENT's right to continue attending CUSD schools

19  through grade 12 once she enrolled in Bunche pursuant to Cal.Ed.C. § 48204(b):

20  (1) if PARENT chose otherwise, or (2) if PARENT ceased to be physically

21  employed within CUSD's attendance boundaries.  Evidence in the due process

22  hearing case administrative record establishes without controversy that PARENT

23  repeatedly indicated throughout the 2017–2018 school year, both before and after

24  February 23, 2018, that her choice was for STUDENT to continue Bunche.

25  The administrative record contains no assertion, proof or finding that PARENT

26  ceased to be physically employed by CUSD itself prior to the conclusion of the

27  2017–2018 school year on June 30, 2018.  Pursuant to Cal.Ed.C. § 48204(b)(8),

28  it follows as a matter of law that CUSD was under a duty to provide educational

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

1  services to STUDENT at all times from August 17, 2017, through and including
2  June 30, 2018.

3          86.     In concluding otherwise, the ALJ noted that the fundamental
4  basis for granting Cal.Ed.C. §48204(b) permission to attend CUSD schools based
5  on parental employment was that STUDENT otherwise would have had to attend
6  LAUSD (the district in which PARENT resided during summer 2017) rather than
7  CUSD (the district in which PARENT worked).  This led the ALJ to opine that
8  the permission obtained pursuant to § 48204(b) was "no longer necessary" and
9  "not needed" once PARENT relocated her residence to Compton.  The flaw in
10  this reasoning is that it conflates the requirements and rationale for obtaining
11  deemed residency based on parental employment with the requirements and
12  rationale for retaining that status.  The statutory purpose for initially granting a
13  pupil permission to attend school near her parent's place of employment is to
14  give the parent a choice of having her child attend a school near her work if that
15  facilitates her participating in her child's school education by making it more
16  convenient for her to visit the school during school hours.  As long as the parent
17  continues working within the school district's territorial jurisdiction, that purpose
18  is served irrespective of changes in the location of the parent's residence.  Once a
19  school district accepts a pupil on this basis, requiring it to educate the pupil
20  through grade 12 serves the additional purpose of providing long-term stability in
21  the pupil's educational setting no matter where the parent might choose to reside.

22          87.     Even if there were some relevance to the ALJ's opinion that
23  the permission STUDENT obtained pursuant to Cal.Ed.C. § 48204(b) would
24  have been "no longer necessary" and "not needed" once PARENT relocated her
25  residence to Compton, his finding that PARENT had "repudiated" STUDENT's
26  right under Cal.Ed.C. § 48204(b)(8) to continued CUSD attendance, merely by
27  announcing a change of address to Compton, is a complete non sequitur.
28  California law applies the doctrine of repudiation only when one of two parties to

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

a contract announces an intention to refuse performance of an obligation that is not yet due.  That doctrine has no pertinence here, given that PUPIL's rights under Cal.Ed.C. § 48204(b)(8) were statutory rather than contractual, and given that the statutory scheme did not impose any obligations on PARENT, only on CUSD.  Assuming the ALJ instead intended to invoke the doctrine of implied waiver through inconsistent conduct, PARENT's conduct in claiming to live in Compton was in no way inconsistent with STUDENT's claim under Cal.Ed.C. § 48204(b)(8) to continued educational services from CUSD, in that PARENT's change of residence to Compton likewise gave STUDENT a legal entitlement to attend CUSD pursuant to Cal.Ed.C. § 48200.  Had the ALJ instead intended to invoke the doctrine of election between inconsistent alternative remedies, there is no inconsistency in claiming an entitlement to school attendance on the basis of both parental residency and employment, and PARENT's giving CUSD a notice of change of address was not tantamount to an election.

88.    The ALJ's decision hints that CUSD could have "revoked" its summer 2017 decision to enroll STUDENT at Bunche on the basis of parental employment, because documentation communicating that decision to PARENT contained language to the effect that "falsification of information may result in revocation" of permission under § 48204(b).  Properly construed, Cal.Ed.C. § 48204(b)(8) allowed only two exceptions to STUDENT's right to continue attending CUSD schools through grade 12 once she enrolled in Bunche pursuant to Cal.Ed.C. § 48204(b), and falsification of information was not one of them. Furthermore, under California law, school districts have no legal authority to impose conditions on grants of statutory permission above and beyond those which are authorized by the statutes themselves.  While the ALJ commented that CUSD's AR 5111.1 provides that the Superintendent can revoke a student's enrollment upon determining that it was based on false or unreliable evidence of residency, the due process hearing case administrative record contains no

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

1  assertion, proof or finding of any falsehood in connection with PARENT's

2  summer 2017 application for STUDENT's enrollment in CUSD based upon her

3  place of employment, and the Superintendent knew full well that PARENT

4  worked within CUSD's territorial jurisdiction, because she was his employee at

5  CUSD.  In any event, the ALJ made no express finding that CUSD had in fact

6  revoked its summer 2017 decision to enroll STUDENT at Bunche.

7         89.    The ALJ erred in determining that CUSD had no legal

8  obligation to render educational services to STUDENT after February 23, 2018.

9  That determination rested upon (1) his finding that PARENT did not reside in the

10  Compton House during 2018, (2) his rejection of STUDENT's assertion that

11  CUSD violated AR 5111.1 by disenrolling her on February 23, 2018, (3) his

12  rejection of STUDENT's argument that CUSD's permission for her to attend its

13  schools based on parental employment remained in effect during 2018 pursuant to

14  Cal.Ed.C. § 48204(b), (4) his failure to respond to STUDENT's argument that

15  the U.S. and California Constitutions's Due Process Clauses rendered CUSD's

16  purported disenrollment of her ineffective because CUSD gave her no

17  opportunity to be heard prior to disenrolling her, and (5) his failure to respond to

18  STUDENT's argument that CUSD could not rely on nonresidency to terminate

19  its duty to render educational services to her because CUSD's governing board

20  had not adopted a policy consistent with Cal.Ed.C. § 48204.2(b).  If even one of

21  those bases is erroneous, then the ALJ erred in determining that CUSD's

22  obligation to render educational services terminated after February 23, 2018.

23  For the reasons set forth above in paragraphs 67 through 88, inclusive, of this

24  Complaint, all five of the above-enumerated bases of decision were erroneous.

25         90.    The ALJ's ruling that CUSD did not violate Cal.Ed.C.

26  § 56344(a)'s 60-day deadline by failing to complete STUDENT's assessments

27  and convene an IEP Team meeting for her on or before March 12, 2018, rested

28  entirely upon his rulings that (1) CUSD's obligation to educate STUDENT had

27.

terminated on February 23, 2018, when the Superintendent disenrolled her, and (2) CUSD had not deprived STUDENT of a FAPE by delaying issuance of its assessment plan for over two months in violation of Cal.Ed.C. § 56321(a). Since the latter two rulings are erroneous, so is the former.

91.    Even if the AR 5111.1 ten-school-day period before finality of the Superintendent's disenrollment decision commenced running when the Principal delivered the March 5 Letter to PARENT on March 5, 2018, the Superintendent's disenrollment decision would not have taken effect until March 19, 2018.  For this additional reason, the ALJ erred in finding that CUSD did not violate IDEA by failing to complete STUDENT's assessments and convene an IEP Team meeting by March 12, 2018, inasmuch as CUSD's duty to provide educational services to STUDENT had yet to terminate as of that date.

92.    For the reasons set forth in paragraph 61 of this Complaint, CUSD's violation of Cal.Ed.C. § 56344(a)'s 60-day deadline by failing to complete STUDENT's assessments and convene an IEP Team meeting for her on or before March 12, 2018, (1) impeded STUDENT's right to a FAPE, (2) interfered with PARENT's opportunity to participate in the formulation process of an IEP for STUDENT, (3) significantly impeded PARENT's ability to participate in the decisionmaking process regarding the provision of a FAPE to STUDENT, (4) caused STUDENT to suffer a deprivation of educational benefits she would otherwise have enjoyed, and (5) resulted in the loss of an educational opportunity to STUDENT.  Pursuant to Cal.Ed.C. § 56501(f)(2) and (j), CUSD's violation of Cal.Ed.C. § 56344(a) deprived STUDENT of a FAPE.

93.    The ALJ's finding that CUSD had no duty to provide services to STUDENT before February 23, 2018, depended in large part on his finding that CUSD had not deprived STUDENT of a FAPE by its two-month delay in providing PARENT with STUDENT's assessment plan.  Since the latter finding is erroneous for the reasons set forth in paragraphs 58 through 66 of this

28.

Complaint, inclusive, so is the former.

94. The ALJ's finding that CUSD had no duty to provide services to STUDENT after February 23, 2018, depended entirely on his finding that CUSD's obligation to educate STUDENT had terminated on February 23, 2018. Since the latter finding is erroneous, so is the former.

95. Because CUSD's violations of IDEA, and of the statutes and regulations implementing IDEA in California, deprived STUDENT of a FAPE during the period from January 29 through June 30, 2018, STUDENT is entitled to a remedy in the form of compensatory education services that will place her in the same position she would have occupied but for CUSD's violations.

### SECOND CLAIM FOR RELIEF
**ATTORNEY FEE RECOVERY FOR IDEA ADMINISTRATIVE HEARING**
**by Plaintiffs against Defendant CUSD**

96. Plaintiffs incorporate by this reference the allegations set forth above in paragraphs 1 through 6, inclusive, and 8 through 95, inclusive, as though set forth fully herein.

97. Upon prevailing on the First Claim for Relief in this Complaint, Plaintiffs will be prevailing parties in the OAH administrative due process hearing case within the meaning of 20 U.S.C. § 1415(i)(3)(B)(i)(I).

98. Plaintiffs reasonably incurred attorney's fees for preparing, filing and prosecuting OAH Case No. 2019101110.

99. Pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I), Plaintiffs are entitled to recover those attorney's fees from CUSD.

//

//

//

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION

# **PRAYERS**

WHEREFORE, Plaintiffs pray relief as follows:

1.  ON THE FIRST CLAIM FOR RELIEF, for an order vacating the Due Process Hearing Decision in its entirety;

2.  ON THE FIRST CLAIM FOR RELIEF, for a determination that CUSD deprived STUDENT of a FAPE from January 29, 2018 through June 30, 2018, inclusive;

3.  ON THE FIRST CLAIM FOR RELIEF, for determination of appropriate compensatory educational remedies for STUDENT based upon evidence in the due process hearing administrative record;

4.  ON THE FIRST CLAIM FOR RELIEF, in the event the Court should exercise its discretion to remand the issue of compensatory education remedies to OAH for determination in the first instance, that all further proceedings in this Court be stayed during the pendency of that remand;

5.  ON THE SECOND CLAIM FOR RELIEF, for determination of an attorney's fee award for Plaintiffs in connection with the administrative level work undertaken in OAH Case No. 2019101110;

6.  ON THE FIRST AND SECOND CLAIMS FOR RELIEF, for entry of a final judgment (1) vacating the Due Process Hearing Decision in its entirety; (2) declaring and decreeing that CUSD deprived STUDENT of a FAPE from January 29, 2018, through June 30, 2018, inclusive; (3) directing CUSD to provide the specific compensatory educational remedies for STUDENT which this Court determines to be appropriate; and (4) awarding Plaintiffs recovery of reasonable administrative level attorney's from CUSD in the amount determined by the Court;

//

30.

1      7.  For reasonable attorney's fees incurred in prosecution of this suit;

2      8.  For ordinary costs of litigation; and

3      9.  For such other and further relief as the Court may deem just and

4  proper.

5

6  DATED: February 4, 2021                LAW OFFICES OF HIRJI & CHAU

7

8                                         by _____
                                              ROSA K. HIRJI
9
                                          Attorney for Plaintiffs
10                                         P.H. and LAKESHA HARRIS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION